**SO ORDERED.**

**SIGNED this 5th day of February, 2016.**



Dale L. Somers
United States Bankruptcy Judge

_____

**For print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

**BROOKE CORPORATION, et al.,**

                    **DEBTORS.**

**CASE NO. 08-22786
(Jointly Administered)
CHAPTER 7**

**MEMORANDUM OPINION AND JUDGMENT DENYING
ROBERT D. ORR'S SECOND AMENDED MOTION TO REPLACE TRUSTEE**

Robert D. Orr, the founder, 32-percent owner and longtime CEO of Debtor Brooke

Corporation (Brooke Corp), moves to replace the Chapter 7 Trustee, Christopher J.

Redmond, alleging that he is not disinterested. Mr. Orr (Orr) appears pro se. Mr.

Redmond (Trustee or Redmond) appears by Bruce E. Strauss and Victor F. Weber of

Merrick, Baker & Strauss, P.C., special counsel for the Trustee. The Court has

jurisdiction.[1]

When moving to replace the Trustee, Orr's basic premise is that the bankruptcy estates were financially devastated by wrongs committed prepetition by partners of Husch Blackwell LLP (Husch Blackwell) and the postpetition actions of the Trustee, who is a Husch Blackwell partner, in failing to pursue claims by the estates for such wrongs. Orr alleges that the Trustee has acted for his own interests and the interests of his firm, rather than the interests of the bankruptcy estates.

**BACKGROUND FACTS.**

After hearing oral argument on Orr's Motion to Replace Trustee[2] and the Trustee's objection,[3] the Court directed Orr to file an amended motion including all of his allegations.[4] Orr therefore filed his Second Amended Motion to Replace Trustee,[5] which is the motion now before the Court. In accord with the Court's order, the Trustee filed a pleading in support of denial of the motion on grounds other than the ultimate question of

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and § 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). A motion for removal of a trustee is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[2] Doc. 5476.

[3] Doc. 5493.

[4] Doc. 5535.

[5] Doc. 5550.

2

whether the Trustee should be removed because he is not disinterested.[6]  The Trustee's

pleadings are styled as a motion for summary judgment and a memorandum in support,[7]

and include an extensive statement of facts.  Orr contends many of these facts are

controverted, but the Court finds that there is no genuine dispute about the following

background facts which are relevant to the motion to replace the Trustee.

Orr was the president of Debtor Brooke Corporation (Brooke Corp) from 1986

through 1991, the CEO from 1986 through October 1, 2007, and the chairman of the

board from 1991 through September 17, 2008.  Orr also was the CEO, president, and

chairman of the board of Debtor Brooke Capital Corporation (Brooke Capital) at various

times in 2007 and 2008.

Brooke Capital, a subsidiary of Brooke Corp, was an insurance agency and finance

company that distributed insurance services through a network of franchisee-owned and

company-owned locations.  To facilitate the acquisition of existing agencies and the

formation of start-up agencies, Brooke Capital developed a lending program through

which Brooke-affiliated agencies obtained loans from Aleritas Capital Corp. (Aleritas), a

---

[6] Doc. 5599.

[7] Docs. 5598 and 5599.  The Trustee's motion for summary judgment filed in response to Orr's
Second Amended Motion to Replace Trustee, rather than addressing grounds for dismissal of Orr's
motion, addresses defenses to the claims alleged in Orr's draft complaint, a copy of which was attached to
the amended motion.  These defenses include laches, waiver, judicial estoppel because Orr's personal
claims against Husch Blackwell were not revealed in Orr's personal bankruptcy schedules, and collateral
estoppel based upon Orr's lawsuit against the Trustee's predecessor.  The Court declines to address these
defenses.  Although some of these theories may provide valid defenses to at least some of the claims that
Orr wants a new trustee to pursue against Husch Blackwell, the draft complaint has not been filed.  The
matter before this Court is the Second Amended Motion to Remove Trustee, not the merits of the claims
which Orr hopes will be filed.

non-debtor Brooke-related company.  In 2003, Aleritas began securitizing the franchisee loans for sale to investors.  Bank of New York Mellon (BONY) acted as the trustee for the benefit of the note-holders in some of the Brooke securitizations.

On September 11, 2008, BONY filed a complaint in the District Court against Orr individually and a number of Brooke companies, including Brooke Corp, Brooke Capital, and Aleritas, alleging that the Brooke Defendants had misappropriated millions of dollars pledged to note-holders in the Brooke securitizations (District Court Action).[8]  It was also alleged that Orr directed Aleritas and the Brooke Defendants to misappropriate funds, and that at the direction of Orr, the misappropriations were intentionally concealed.  With the consent of the parties, including Orr, the Court appointed Albert Riederer as the Special Master of the Special Master Estate, which was defined to be all monies of the Brooke Defendants; all contract rights of the Brooke Defendants related to the securitized loans; all records of the Brooke Defendants; and all other personal and real property of the Brooke Defendants necessary to carry out the duties of the Special Master "to administer and manage the Special Master Estate in a commercially reasonable manner" (the Consent Order).[9]  Partners of Husch Blackwell were hired as counsel for the Special Master.

 Brooke Corp and Brooke Capital filed voluntary Chapter 11 petitions on October 28, 2008, in this Court.  Brooke Investments, Inc., filed a voluntary petition on November

---

[8] *Bank of New York Mellon v. Aleritas Capital Corp.*, Case No. 2:08-cv-02424- JWL.

[9] District Court Action, doc. 23, ¶ 6.

4

3, 2008.  A notice of bankruptcy filing was filed in the District Court Action.[10]  On

October 29, 2008, the Court entered an order appointing Albert Riederer, the Special

Master, as the Chapter 11 Trustee of Brooke Corp and Brooke Capital.  He was later also

appointed as the Chapter 11 Trustee of Brooke Investments.  Orr did not object to these

appointments.  The Court directed the cases to be jointly administered.

On October 31, 2008, an application for the employment of Husch Blackwell as

attorneys for the Trustee was filed.  There were no objections.  The application was

approved by the Court on November 26, 2008.  It provided for compensation for services

to be based upon time spent and hourly rates for the firm's attorneys and paralegals.

On December 11, 2008, Orr filed a proof of claim in the amount of $14,783.68.  Of

this amount, Orr claimed $10,950 was entitled to the priority for wages, salaries, or

commissions earned within 180 days before the filing of the bankruptcy petition.  Orr was

listed as a creditor of Brooke Capital on Schedule E, Creditors Holding Unsecured

Priority Claims.[11]  On August 26, 2009, Brooke Holdings, Inc., filed a proof of claim for

$11,096,002.39, which was later transferred to Orr.[12]

On June 29, 2009, the Court entered an order converting the Debtors' bankruptcy

proceedings to Chapter 7 and noting the United States Trustee's decision to appoint

---

[10] The Consent Order was vacated effective as of the date the Debtors' bankruptcy cases were
converted to Chapter 7.  The District Court Action was administratively closed on May 19, 2011.  District
Court Action, docs. 102 and 105.

[11] Case 08-22789, doc. 36 at 23.

[12] Claim no. 924.

Riederer as the Chapter 7 Trustee of the Debtors upon conversion. On July 2, 2009, the Chapter 7 Trustee filed his motion for the continued employment of Husch Blackwell as counsel for the Trustee. The motion, as supplemented, was approved on August 22, 2009, without objection.

In the fall of 2011, Riederer found it necessary to resign as Trustee for health reasons.[13] Christopher J. Redmond, a partner at Husch Blackwell, was contacted by the attorneys in the Office of the United States Trustee regarding his potential appointment as the successor trustee. The United States Trustee's office was aware that Husch Blackwell was serving as counsel for Riederer and indicated that Redmond's appointment would facilitate an orderly transition and continued administration of the cases. On November 3, 2011, a notice of Riederer's resignation and the appointment of Redmond was entered on the docket. Prior to his appointment as the Trustee, Redmond did not perform any services for the Debtors or for Riederer in his capacities as Special Master, Chapter 11 Trustee, or Chapter 7 Trustee.

On October 24, 2013, the Trustee filed an application to approve a revised compensation structure, including a contingent-fee basis for specific adversary proceedings, for Husch Blackwell, as the Trustee's lead attorneys. On December 5, 2013, the Court held an evidentiary hearing on a second revised compensation proposal. On December 20, 2013, the Court approved the majority of the provisions in that proposal,

---

[13] Riederer passed away some months later.

6

and requested the filing of a third revised proposal to address those matters not approved. On January 6, 2014, the Court entered its order approving the revised application. Orr did not object.

Starting in December 2012, the Trustee filed monthly status reports, and starting in December 2013, he filed monthly financial reports. At the request of the United States Trustee, on April 19, 2013, the Court approved the submission of future status reports on a quarterly basis. The most recent status report, for the period from July through September 2015,[14] includes the following information evidencing the complexity and magnitude of the tasks undertaken by the Trustee and his counsel. Ninety-three adversary complaints have been filed (mostly in October 2010) against 487 defendants. Eighty-one of these cases have resulted in settlement (307 defendants), default (55 defendants), or dismissal (113 defendants).[15] There were 10 remaining cases involving 17 defendants. The gross claims asserted against the defendants in these outstanding cases were $182,683,513.62. Recoveries to date were $13,617,309.91. Since the filing of the report, the Court has approved the settlement of the Trustee's claim against Kutak Rock for approximately $17.5 million.[16] One major adversary proceeding is ready for trial. The

---

[14] Doc. 5564.

[15] The Court has discovered two minor math errors in the report: the number of cases resolved actually totals 83, and the number of defendants involved in the resolved cases totals 470, not 475 (307 + 55 + 113 = 475). These errors have not affected the Court's decision.

[16] The gross claim against Kutak Rock was $173 million, approximately 95% of the outstanding gross claims.

7

total claims against the bankruptcy estates, after deducting disallowed claims, paid claims, and withdrawn claims, are approximately $355 million for Brooke Corp, $113 million for Brooke Capital, and $1.5 million for Brooke Investments. Total professional fees and expenses paid through December 31, 2013, were approximately $15 million.

Orr filed a voluntary petition under Chapter 11 on December 16, 2008. The case was converted to Chapter 7 on December 7, 2009. The listing of possible claims in Orr's bankruptcy schedules included one against the Special Master (Riederer), but none against Husch Blackwell.

In a letter dated June 9, 2010, addressed to the Office of the United States Trustee in Wichita, Kansas, Orr in his capacity as the president of Brooke Holdings, Inc., advised that he believed Riederer was obligated to Brooke Holdings, as a lender to Brooke Corporation, as a result of Riederer's allegedly improper acts as Special Master. Orr also alleged that Riederer as Chapter 7 Trustee had acted in his own self-interest to avoid claims by the bankruptcy estate against him for misconduct as Special Master.[17]

On August 11, 2010, Orr filed a complaint against Riederer in the District Court of Phillips County, Kansas. The case was removed to the United States District Court for the District of Kansas.[18] Orr alleged that Riederer's conduct when serving as Special Master caused damage to Brooke Capital and the October 2008 collapse of the Brooke companies. The Court dismissed Orr's claims for gross negligence, intentional

---

[17] Doc. 5476-3 at 2-3.

[18] *Orr v. Riederer*, Case No. 6:10-cv-1303-CM (Riederer Suit).

misconduct, breach of fiduciary duties, and unjust enrichment, holding that Orr lacked standing because he alleged he suffered only an indirect injury. The Court held that Orr could serve as a representative shareholder and amend his complaint to assert the dismissed claims as derivative claims, subject to Orr engaging an attorney to represent him. Orr did not hire an attorney and never amended his complaint to assert any derivative claims. On July 3, 2012, the District Court granted summary judgment against Orr on the remaining claims, and judgment was entered in Riederer's favor.

On May 4, 2011, the Securities and Exchange Commission filed a Complaint against Orr alleging that in SEC filings and public statements for the year-end of 2007 and the first and second quarters of 2008, Orr and others violated securities laws by misrepresenting the health of Brooke Capital's business, Aleritas's loan portfolio, and the increasingly dire liquidity and financial conditions of the Brooke companies. On July 13, 2011, Orr consented to a judgment against him. On November 14, 2012, a federal grand jury indicted Orr for making false statements in Securities and Exchange Commission filings. On June 27, 2013, Orr pled guilty to knowingly making false or misleading statements regarding material facts in Brooke Corp's 10-K for the year ending December 31, 2007.

On November 26, 2011, after Riederer's resignation and the appointment of Redmond as the successor Trustee, by a letter to Jay Befort, Assistant United States Trustee, Orr, individually and as president of Brooke Holdings, Inc., stated his allegation that Redmond as Chapter 7 Trustee had a conflict of interest. Orr alleged that Douglas

9

Schmidt, a Husch Blackwell partner who was counsel for Riederer as Special Master, held animosity toward Orr and "that the appointment of a Husch Blackwell partner as bankruptcy trustee will result in reprisals against [Orr] from Husch Blackwell using bankruptcy estate assets."[19] The record contains no response from the U.S. Trustee.

By a letter dated July 22, 2013, addressed to the United States Trustee in Wichita, Orr again alleged that Redmond had a conflict of interest. Orr requested a "complete and thorough investigation of any appearance of conflict" and that all documents submitted by the parties in Orr's lawsuit against Riederer be analyzed by the United States Trustee in performing its analysis of trustee suitability.[20] The allegations in the letter included the assertion that the "refusal of the trustee [of the Brooke cases] to fund litigation against himself for pre-filing actions is an example of conflict, especially when analyzed in context of the hundreds of adversary actions filed by the trustee against others for their pre-filing actions."[21] On September 10, 2013, in another letter to the office of the United States Trustee in Wichita, Orr focused upon alleged conflicts of interest of Husch Blackwell resulting from actions before and while Riederer was serving as Special Master.[22]

Despite the concerns that Orr directed to the United States Trustee, he did not file

---

[19] Doc. 5476-3 at 7.

[20] *Id*. at 12-13.

[21] *Id*. at 13.

[22] *Id*. at 15.

Case 08-22786   Doc# 5635   Filed 02/05/16   Page 10 of 22

with the Court any objection to the original application of Chapter 11 Trustee Riederer to employ Husch Blackwell, to the application for the continued employment of Husch Blackwell as attorneys for Riederer as the Chapter 7 Trustee, to the appointment of Redmond as the successor Chapter 7 Trustee, or to the amendment of the Husch Blackwell compensation structure in 2013.

By August 3, 2015, Orr had drafted a proposed complaint asserting personal and derivative claims against Husch Blackwell and two of its partners.  It is Orr's position that "Husch Blackwell and its partners caused the substantial losses [to the Brooke companies] when they governed Brooke Corporation during the 2008 financial crisis prior to the bankruptcy filing."[23]  The draft complaint includes 6 counts on behalf of Orr individually and 6 counts as derivative claims on behalf of the shareholders of Brooke Corp, Aleritas, and Brooke Agency Services Company.  A copy of the draft was forwarded to the potential defendants and to Redmond, together with a demand that Redmond file the complaint on behalf of the Brooke Corp bankruptcy estate.[24]  Redmond responded, stating that he had not had time to review the complaint but that if Orr were to file the complaint, it would be a violation of the automatic stay.  In an e-mail Orr sent on August 10, 2015, to an individual at the United States Department of Justice and to Redmond, Orr requested support from the Department of Justice "if Mr. Redmond does not (in good faith) request approval for payment of legal expenses for the derivative

---

[23] Doc. 5476-5 at 3.

[24] Doc. 5476-4 at 2.

11

allegations."[25]

On August 18, 2015, Orr filed his Motion to Replace Trustee.[26]  Attached to the motion is a copy of the draft complaint against Husch Blackwell, Douglas Schmidt, and John J. Cruciani, who are Husch Blackwell partners.  The motion characterizes the correspondence between Orr and Redmond in August 2015 as regarding the payment of legal fees required to prosecute derivative claims on behalf of Brooke Corp shareholders against the potential defendants.  After the Court heard arguments on Orr's motion, Orr sent an e-mail to counsel for the Trustee on September 23, 2015, with respect to Orr's allegations, in which he stated:

> My end game is not to replace the trustee. . . . My end game is for the district court to decide if Husch Blackwell is culpable. . . .
>
> I am willing to withdraw my motion to replace the trustee and my objection to Veris compensation if the trustee obtains court approval for a $1,000,000 fees retainer to be paid into the trust account of the attorney I have selected to represent shareholders. . . .
>
> The payment of a $1,000,000 retainer would be paid by the estate and not by Husch Blackwell.  As such, the only reason for the trustee to oppose this arrangement is to protect his employer and partners.[27]

The Trustee, through special counsel, responded to the Motion to Replace Trustee,

---

[25] Doc. 5476-5 at 2-3.

[26] Doc. 5476.

[27] Doc. 5550-7 at 2.

contending there was no reason to replace the Trustee because there was no basis to find that Redmond was not disinterested.  According to the Trustee, the record in prior actions by and against Orr precluded the allegations made against Husch Blackwell, which in any event, were time-barred.[28]

The United States Trustee appeared at the argument on the Motion to Replace Trustee because Orr had contacted his office "about these issues with Mr. Redmond."[29] The United States Trustee stated, "We have reviewed them.  He requested that we remove Mr. Redmond for the reasons he stated in his motion.  We did not believe that there was cause for us to take action, so we did not, which led to Mr. Orr taking his action [of filing the Motion to Replace Trustee]."[30]

Orr's Second Amended Motion to Replace Trustee was filed on November 10, 2015.[31]  A draft complaint identical to that attached to the first Motion to Replace Trustee is attached.  In the motion, Orr alleges Redmond should be replaced as trustee because he is not "disinterested" as defined by 11 U.S.C. § 101(14)(C), saying:

> a) due to potential causes of action against employer Husch Blackwell, LLC, partner Douglas Schmidt and partner John Cruciani (collectively "Husch Blackwell") for their pre-bankruptcy misconduct while counsel for the Brooke Corporation special master estate,

---

[28] Doc. 5493.

[29] Doc. 5578, transcript of 10/27/2015 status conference at 4.

[30] *Id*.

[31] Doc. 5550.

13

<blockquote>
b) due to potential causes of action against Husch Blackwell for promoting interests adverse to the Brooke Corporation bankruptcy estate while counsel for the Brooke Corporation bankruptcy estates [sic] in order to protect Husch Blackwell from legal liability for their pre-bankruptcy misconduct,

c) due to potential causes of action against Redmond, individually and as trustee, for promoting interests adverse to the Brooke Corporation estate in order to protect and enrich Husch Blackwell.[32]
</blockquote>

Orr argues that his Motion to Replace Trustee is timely because the last of the adversary actions filed by the Trustee against Orr and his family members was concluded only a few months ago and he relied upon the United States Trustee to supervise Redmond until these actions were completed.[33]

**DISCUSSION**

**A. Grounds for Removal.**

Orr's motion seeks an order to remove Redmond for lack of disinterestedness due to his relationship with Husch Blackwell, the law firm alleged to have caused the collapse of Brooke's business. Removal of a trustee is addressed by 11 U.S.C. § 324(a), which provides: "The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." The Bankruptcy "Code does not define what constitutes sufficient cause[, and] courts must make the determination on a case by

---

[32] Doc. 5550 at 2.

[33] Doc. 5550-1 at 12.

14

case basis."[34]  The party seeking removal has the burden of proof.[35]  "Under the Bankruptcy Code, causes for removal have included situations in which the trustee was found to be incompetent or unwilling to perform the duties of a trustee; the trustee was not disinterested or held an interest adverse to the estate; the trustee violated the fiduciary duty to the estate; and the trustee was guilty of misconduct in office or personal misconduct."[36]  "[A] trustee will not be removed for mistakes in judgment where the judgment is discretionary and reasonable under the circumstances."[37]  Further, "courts should consider the best interests of the estate, rather than those of a single movant creditor, when determining whether to remove a trustee."[38]

Orr alleges that the Trustee is not disinterested and acted to protect Husch Blackwell rather than to promote the interests of the estate.  The allegations assert grounds recognized as sufficient for removal under § 324.  Nevertheless, one must look below the surface of the motion to place the matter in proper context.  The grounds for

---

[34] *In re Miller*, 302 B.R. 705, 709 (10th Cir. BAP 2003).

[35] *Cf. In re Lundborg*, 110 B.R. 106, 108 ("In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud."); *In re Hartley*, 50 B.R. 852, 859 (Bankr. N.D. Ohio 1985) ("Forcing the accusors [seeking removal of a trustee under § 324] to quickly come forward and show actual harm or fraud protects not only innocent trustees but also the orderly administration of estates which should not be disrupted because creditors are unhappy when trustees institute actions against them pursuant to their statutory duties to recover preferences or fraudulent transfers.").

[36] 3 *Collier on Bankruptcy*, ¶ 324.02[1] at 324-4 to 324-5 (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2015).

[37] *Id*. at ¶ 324.02[3] at 324-6.

[38] *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990).

15

removal on first examination appear to be significant multiple offenses. However, close

examination reveals that all of the allegations are built upon the single contention that the

Trustee is not disinterested because Husch Blackwell attorneys are liable to Orr

personally and to the stockholders of various Brooke-related companies for alleged

malfeasance that supposedly caused the collapse of the Brooke enterprise during the

period when Riederer was the Special Master. The allegations of a lack of

disinterestedness after the Brooke Corp bankruptcy was filed assert that (1) Husch

Blackwell as counsel for Riederer as the Chapter 11 Trustee, (2) Redmond as the Chapter

7 Trustee, and (3) Husch Blackwell as counsel for Trustee Redmond, have acted to

protect Riederer and Husch Blackwell from being held liable to Orr and the stockholders

for these pre-petition wrongs. The multiple assertions in the Motion to Replace Trustee

have been inflated by creative pleading to appear monumental, when in reality there is

only one basic source of the alleged lack of disinterestedness arising from the alleged

liability for the collapse of the Brooke business during the Special Master period. But

this basic allegation is not a simple matter; the Court's familiarity with the cases leads it

to conclude that whether this allegation is true could only be established by a trial on the

merits involving multiple experts, after extensive discovery.[39]

---

[39] The Trustee contends that collateral estoppel bars Orr's claim of Husch Blackwell liability arising from events while the Special Master was in control of Brooke because of the District Court's dismissal of the Riederer Suit, Orr's suit against Riederer. The Court has been provided only minimal facts and arguments, but those facts suggest that there was no adjudication on the merits of the derivative claims which are important here. *See* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Civil 3d*, § 3531 at 1-2 (3rd ed. 2008) ("Standing doctrines are employed to refuse to determine the merits of a legal claim, on the ground that even though the claim may

16

**B. The Motion to Replace Trustee is denied for unjustified delay.**

Neither the Bankruptcy Code nor the Bankruptcy Rules provide a time limit for filing a motion to remove a trustee. However, case law establishes that a motion to remove a trustee or to disqualify a professional for not being disinterested may be denied for undue delay. "An unjustified delay in bringing a motion to disqualify [a professional under § 327(a)] provides a separate ground to deny the relief requested in the underlying motion."[40] For example, a motion was found to be untimely where a Chapter 11 trustee had been appointed on September 28, 2012, but the request for removal was not asserted until March 19, 2014.[41] Where the underlying basis for the disqualification of accountants was known in April 2003 but the motion was not filed until March 2004, the delay was held to be unjustified.[42] A delay of less than two months in contesting the disinterestedness of counsel hired by an unsecured creditors committee has also been found to be unjustified.[43]

In this case, the delay in bringing the Motion to Replace Trustee is a sufficient reason to deny it. The predicate for Orr's assertions of the Trustee's lack of

---

be correct the litigant advancing it is not properly situated to be entitled to its judicial determination.").

[40] *In re WorldCom, Inc.*, 311 B.R. 151, 166-167 (Bankr. S.D.N.Y. 2004) (seeking disqualification of debtor's accounting firm as holding adverse interest and not being disinterested).

[41] *In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 560-61 (S.D.N.Y. 2015).

[42] *In re Worldcom*, 311 B.R. at 165-68.

[43] *Exco Res., Inc. v. Milbank, Tweed, Hadley & McCloy LLP (In re Enron Corp.)*, 2003 WL 223455 at *4 n. 2 (S.D.N.Y. 2003).

disinterestedness is the allegation that the collapse of the Brooke enterprise was caused by the actions of Riederer and his counsel, partners in Husch Blackwell, while Riederer was serving as Special Master in 2008.  Orr was a party to the BONY litigation in which the Special Master was appointed and had knowledge of Riederer's actions and inactions as they occurred.  By the time Brooke Corp filed for bankruptcy in October 2008, the events giving rise to Orr's present allegations had occurred and were known or should have been known by him.  In his response to the Trustee's motion for summary judgment, Orr states, "It is undisputed that Orr was aware of potential claims against Husch Blackwell for gross negligence, intentional misconduct, breach of fiduciary duties and unjust enrichment before filing a lawsuit against Riederer in August 2010."[44]  In addition, Orr's correspondence with the Office of the United States Trustee conclusively shows that he had formulated his conflict theory no later than November 26, 2011, the date of the letter in which he alleged that Redmond had a conflict of interest because of Schmidt's representation of Riederer as Special Master.  The very specific allegation of a conflict of interest because Redmond would not fund litigation against Husch Blackwell for pre-filing actions is raised in Orr's letter dated July 22, 2013, which stated that such refusal had occurred before March 19, 2012.[45]

Yet Orr waited until August 18, 2015, to file his Motion to Replace Trustee.  Orr contends that this delay was justified because the Trustee's actions against Orr's family

_____

[44] Doc. 5611 at 11.

[45] Doc. 5476-3 at 13.

members were not concluded until a few months earlier. He alleges that the pendency of such actions created a conflict between Orr's interest in the affairs of his family and his interest in pursuing the Trustee, and the motion is timely because it was filed shortly after this alleged conflict was resolved by the conclusion of the claims against his family.[46] He further alleges that "[p]rior to this last settlement, the filing of a motion to replace Redmond would have been perceived as a strategy for personal defense in the family adversary actions."[47] In addition, he contends that the delay was justifiable because prior to filing the motion to replace the trustee, he relied upon the United States Trustee to pursue the matter.[48] The Court rejects these reasons as a basis to find the delay to be justified. If a motion to remove the trustee could be delayed for personal reasons for years until the administration of the bankruptcy estate is near completion, the very purpose of permitting removal — to assure the independent administration of the estate — would be defeated. Orr's letter of July 22, 2013, indicates that by a letter dated March 19, 2012, the United States Trustee advised him that he had analyzed Orr's allegations and found them wanting. Relying on the United States Trustee to pursue disqualification after that date was not reasonable.

**C. The circumstances of the present motion evidence the appropriateness of denying the motion because of delay.**

---

[46] Doc. 5611 at 13.

[47] Doc. 5550-1 at 12; *see* Doc. 5578, transcript, Oct. 27, of 10/27/2015, status conference at 8 & 30-32.

[48] Doc. 5611 at 13.

As stated above, when ruling on motions to remove trustees, "courts should consider the best interests of the estate, rather than those of a single movant-creditor."[49] In this case, removal of the Trustee at this late stage would cause administrative chaos, resulting in harm to the estates. These are complex cases. Only Redmond and his counsel can efficiently bring these cases to a conclusion. The cost to the estates resulting from the substitution of a new trustee, and presumably the appointment of substitute counsel for the substituted trustee, more than seven years after the cases were commenced, would be significant.

Further, whether there is cause to remove Redmond cannot be determined until an unknown date far in the future. The basic allegation of a lack of disinterestedness, from which Orr's multiple allegations arise, is that Husch Blackwell attorneys, when acting as counsel for Riederer as Special Master, controlled or perhaps facilitated Riederer's actions which caused the collapse of Brooke's business. It is understating the obvious to note that a determination of the cause of Brooke's failure could not be made until after extensive discovery and a lengthy trial. Riederer's unavailability as a witness would increase the litigation burden. Orr's delay in moving for the replacement of the Trustee has prejudiced the Court's ability to resolve the merits of the conflict-of-interest allegations in a timely manner before the administration of the estates is substantially complete.

In addition, Orr does not purport to have brought the Motion to Replace Trustee for

---

[49] *In re Lundborg*, 110 B.R. at 108.

20

the benefit of the estates and their creditors.  Orr's motivation is highly personal; he seeks

through litigation under his control to prove that he is not to blame for the collapse of the

Brooke enterprise.  Since Redmond has not agreed to pursue litigation alleging that Husch

Blackwell is to blame or to provide Orr with $1,000,000 to do so, he seeks the removal of

Redmond.  He explains the purpose of his motion as follows:

> Redmond's Memorandum inaccurately states Orr's
> litigation objective includes the replacement of Redmond with
> a chapter 7 trustee who will file a complaint against Husch
> Blackwell for their pre-bankruptcy misconduct.  *Orr, not the
> chapter 7 trustee, is the most suitable party to file the
> referenced complaint* because the complaint includes personal
> claims against Husch Blackwell that are owned by Orr and
> because the complaint includes derivative claims against
> Husch Blackwell in which Brooke Corporation shares
> ownership with thousands of other shareholders in non-
> bankrupt and publicly traded Aleritas Capital Corp
> ("Aleritas").  Orr seeks to share the burden of litigation with
> Brooke Corporation's bankruptcy estate and with Aleritas'
> shareholders/creditors.  Orr intends to partially fund his share
> of litigation expense from payment to Orr on the $12 million
> promissory note claim against the Brooke Corporation
> bankruptcy estate.[50]

Before filing his Second Amended Motion to Replace Trustee, Orr advised special counsel

for the Trustee as follows:

> My end game is not to replace the trustee. . . . My end game is
> for the district court to decide if Husch Blackwell is
> culpable. . . .
>
> I am willing to withdraw my motion to replace the trustee and
> my objection to Veris compensation if the trustee obtains court

---

[50] Doc. 5611 at 1 (emphasis supplied).

> approval for a $1,000,000 fees retainer to be paid into the trust
> account of the attorney I have selected to represent
> shareholders. . . .
>
> The payment of a $1,000,000 retainer would be paid by the
> estate and not by Husch Blackwell.  As such, the only reason
> for the trustee to oppose this arrangement is to protect his
> employer and partners.[51]

To remove a trustee under § 324 under the circumstances of this case would be a misuse of the Court's authority.

**CONCLUSION AND JUDGMENT.**

For the foregoing reasons, the Court denies Orr's Second Amended Motion to Replace Trustee.  Judgment is hereby entered denying the relief sought in that motion.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure, which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.  The judgment based on the ruling stated above will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

# # #

---

[51] Doc. 5550-7 at 2.

Case 08-22786   Doc# 5635   Filed 02/05/16   Page 22 of 22